IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CYNTHIA MELVIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09CV174 |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Cynthia Melvin, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on September 27, 2005, alleging a disability onset date of December 1, 2004. (Tr. at 28, 44.)[2] Her application was

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #9].

denied initially and upon reconsideration. (Tr. at 32-35, 38-40.) Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 41.) Present at the hearing, held on February 25, 2008, were Plaintiff, her attorney, and a vocational expert ("VE"). (Tr. at 11.) The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 21) and, on January 8, 2009, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 3-5).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since December 1, 2004, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).
> . . . .
>
> 3. The claimant has the following severe impairments: degenerative disc disease, personality disorder and depression (20 CFR 404.1520(c)).
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 10 pounds frequently and 20 pounds occasionally, stand and walk 6 hours in an 8 hour workday and sit 6 hours in an 8 hour workday. The claimant is also limited to the performance of work involving unskilled, routine, simple, repetitive tasks with occasional interaction with others. (20 CFR 404.1567(b)).

(Tr. at 13-15.)

In light of the above findings regarding residual functional capacity ("RFC"), along with the VE's testimony, the ALJ determined that Plaintiff was not under a "disability," as defined in the Act, from her alleged onset date through the date of the decision. (Tr. at 20.)

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the

[ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. " Craig, 76 F.3d at 589 n.1.

4

requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: degenerative disc disease, personality disorder, and depression. The ALJ found at step three that these impairments did not meet or equal a disability listing. Therefore, Plaintiff's RFC was assessed, and the ALJ determined that Plaintiff could only perform unskilled, light work with further limitations. Based on this determination, the ALJ concluded under step four of the analysis that Plaintiff she could not return to her past relevant work. The ALJ then concluded at step five, that, given Plaintiff's age, education, work experience, and RFC, she could perform other jobs available in the community and was therefore not disabled.

---

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

6

Plaintiff argues that substantial evidence fails to support the Commissioner's findings in three ways. First Plaintiff challenges the Commissioner's findings at step three. In particular, Plaintiff claims that the ALJ failed to properly evaluate her depression under 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04 ("Listing 12.04") and her back impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04 ("Listing 1.04"). (Pl.'s Br. [Doc. # 12] at 1.) She contends that either of these would qualify as a listed impairment at step three. Second, Plaintiff challenges the ALJ's RFC formulation, claiming that the ALJ improperly favored certain medical evidence of Plaintiff's mental and physical abilities while discounting other such evidence. In particular, according to Plaintiff, the ALJ erred in relying on the mental RFC assessment of Dr. Breslin, a non-examining consultant, over an assessment by Dr. Gibbs, a one-time examining consultant. (Id. at 17-19.) Similarly, she claims that "[t]he ALJ excluded all physician generated physical [RFC] assessments, and had no substantial evidence upon which to base his assessment that [Plaintiff] could perform 'light' work." (Id. at 1.) Third, and finally, Plaintiff claims that "[t]he ALJ did not properly consider the cumulative effects of [Plaintiff's] impairments upon her, but only analyzed the effects of the impairments in isolation." (Id.)

The Court has considered Plaintiff's contentions. However, in considering these contentions, the Court notes that new evidence of Plaintiff's mental impairment was accepted by the Appeals Council, but not considered by the ALJ. Specifically, a March 25, 2008, statement by therapist Aaron Munching was submitted directly to the Appeals Council. (See Tr. at 2.) This evidence bears upon Plaintiff's contention that the ALJ failed to properly evaluate her mental impairments at step three, failed to properly formulate the RFC, and failed to

7

properly consider the cumulative effects of Plaintiff's impairments. For example, at step three, Plaintiff challenges the ALJ's finding that her "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.04." (Tr. at 14.) For depression to meet the required level of severity under this listing, a plaintiff first must manifest certain "paragraph A" criteria, i.e., specific symptoms. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04(A).[6] In particular, a plaintiff must show "[m]edically documented persistence, either continuous or intermittent" of depression "characterized by at least four of the following:"

   a.   Anhedonia or pervasive loss of interest in almost all activities; or
   b.   Appetite disturbance with change in weight; or
   c.   Sleep disturbance; or
   d.   Psychomotor agitation or retardation; or
   e.   Decreased energy; or
   f.   Feelings of guilt or worthlessness; or
   g.   Difficulty concentrating or thinking; or
   h.   Thoughts of suicide; or
   i.   Hallucinations, delusions, or paranoid thinking

20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04(A)(1). These symptoms, in turn, must result in at least two of the following "paragraph B" criteria:

   1.   Marked restriction of activities of daily living; or
   2.   Marked difficulties in maintaining social functioning; or
   3.   Marked difficulties in maintaining concentration, persistence, or pace; or
   4.   Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04(B).

---

[6] Although both Plaintiff's contention and the ALJ's decision use the more general term "mental impairments" when discussing Listing 12.04, Listing 12.04 solely applies to affective disorders, such as depression, which are "[c]haracterized by a disturbance of mood." The severity of Plaintiff's other mental impairment, that is, her personality disorder, falls under a separate listing, 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.08, which Plaintiff does not raise in the present appeal.

8

In the present case, the ALJ provided no express analysis of whether Plaintiff's depression met the requisite "paragraph A" criteria for Listing 12.04. Instead, he proceeded directly to "paragraph B," where he determined that Plaintiff had a mild restriction in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (Tr. at 14.) Accordingly, the ALJ concluded that Plaintiff's depression failed to meet or medically equal the criteria of Listing 12.04.[7]

Plaintiff contends that substantial evidence fails to support the ALJ's findings regarding the severity of her symptoms under "paragraph B." (Pl.'s Br. at 10.) In support of this contention, Plaintiff points to the medical evidence that was not before the ALJ, namely the March 25, 2008, statement by therapist Aaron Munching, which Plaintiff submitted directly to the Appeals Council. (See Tr. at 2.) The Appeals Council incorporated Mr. Munching's report in the administrative record, but ultimately denied review of Plaintiff's claim. In response to Plaintiff's contentions, Defendant now argues that the Court "should not consider evidence that was not submitted to the ALJ" because it was "not part of the evidence on which the decision was based." (Def.'s Br. at 8.)

Although some circuits follow Defendant's line of reasoning, the Fourth Circuit has expressly held that the courts must "'review the record as a whole' including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.'" Meyer

---

[7] The ALJ also determined that Plaintiff's depression failed to meet the "paragraph C" of Listing 12.04, which provides an alternative path to disability where a plaintiff fails to meet paragraphs A and B. Because Plaintiff makes no claim that her depression met the heightened severity level set out in paragraph C, this finding merits no further discussion.

9

v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011) (citing Wilkins v. Sec., Dept. of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)). In Meyer, the Fourth Circuit noted that under the applicable regulations, on appeal of the ALJ decision to the Appeals Council, claimants may submit additional evidence, and the Appeals Council will consider the evidence if it is "new and material evidence" that "relates to the period on or before the date of the administrative law judge hearing decision." Meyer, 662 F.3d at 704-705 (citing 20 C.F.R. § 404.970(b)). The Appeals Council then evaluates the entire record and may grant the request for review or, after considering all of the evidence including the new evidence allowed, deny the request for review. However, even where the Appeals Council denies the request for review, the new and material evidence considered by the Appeals Council is considered by the Court in reviewing the record as a whole. Meyer, 662 F.3d at 704.

Notably, "the regulations do not require the Appeals Council to articulate its rationale for denying a request for review," even when it considers new, material evidence. Meyer, 662 F.3d at 705-706. This "lack of . . . additional fact finding does not render judicial review 'impossible' -- as long as the record provides 'an adequate explanation of the Commissioner's decision.'" Id. at 707 (quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) (internal brackets omitted)). Accordingly, the Fourth Circuit has affirmed in cases where, after reviewing new evidence, substantial evidence supported the ALJ's findings. Meyer, 662 F.3d at 707 (citing Smith v. Chater, 99 F.3d 634, 638-39 (4th Cir. 1996)). "Conversely, when consideration of the record as a whole revealed that new evidence from a treating physician was not controverted by other evidence in the record, [the Fourth Circuit has] reversed the ALJ's decision and held that

10

the ALJ's denial of benefits was 'not supported by substantial evidence.'" Meyer, 662 F.3d at 707 (citing Wilkins, 953 F.2d at 96). However, where new evidence competes with the evidence underlying an ALJ's decision, a situation arises in which "no fact finder has made any finding as to the [new evidence] or attempted to reconcile that evidence with the conflicting and supporting evidence in the record." Id. at 707. Because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder," the Court "must remand the case for further fact finding" in such an instance. Id.

In the present case, a review of the record as a whole indicates that the new evidence submitted by Plaintiff competes with evidence underlying the ALJ's decision, but there are no findings as to the weight or value of that new evidence. With respect to the ALJ's decision itself, the ALJ's "paragraph B" assessment primarily draws from the January 9, 2006 mental RFC assessment provided by Dr. Marianne Breslin, a state agency medical consultant. Dr. Breslin reviewed Plaintiff's medical records and reported daily activities up to that date, and found Plaintiff moderately restricted in both social functioning and maintaining concentration, persistence, or pace, and mildly restricted in activities of daily living. (Tr. at 293.) Dr. Breslin also determined that Plaintiff suffered one or two episodes of decompensation. (Id.) Upon review, the ALJ partially discounted Dr. Breslin's assessment, noting that Plaintiff "had not sought ongoing treatment for [her depression]," suffered only "moderate" symptoms per her medical records, "denied suicidal ideations," and was "able to care [for] her personal need[s] and activities of daily living as well as work." (Tr. at 18.) The ALJ used this rationale to support his less restrictive "paragraph B" assessment, finding only mild restriction in activities of daily living,

11

mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation.

At the other end of the severity spectrum, the ALJ's decision also noted Plaintiff's Global Assessment of Functioning ("GAF") scores of 50 and 51, each measured in early 2008. (Tr. at 17.) The GAF scale rates the social, occupational, and psychological functioning of adults as a number from 0 through 100. <u>Diagnostic and Statistical Manual of Mental Disorders</u>, p. 34 (4th ed., text revision 2000) ("DSM-IV-TR"). A score of 51-60 indicates "moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)," while a score of 41-50 indicates a "serious impairment in social, occupation, or school functioning (e.g., no friends, unable to keep a job)." <u>Id.</u> These scores and their corresponding restrictions on functioning are consistent with Plaintiff's diagnosis of major depressive disorder of moderate severity. (<u>See</u> Tr. at 17.)

Plaintiff's new evidence, the March 25, 2008, medical statement from Mr. Munching, also reported a GAF of 50. (Tr. at 366.) In addition, Mr. Munching opined that Plaintiff suffered "marked" or "extreme" impairment in almost all areas of work functioning. (Tr. at 366-67.) He concluded that Plaintiff had marked restrictions in her activities of daily living, extreme difficulty in maintaining social functioning, some level of deficiency in terms of concentration, persistence, or pace, and repeated episodes of decompensation in work settings. (Tr. at 366.) He specifically noted that Plaintiff was "extremely impaired" in her ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule and maintain regular attendance, to work in coordination with and proximity

12

with others without being distracted, to interact appropriately with the public, to get along with coworkers or peers, and to respond to changes in the work setting. He also noted an "[e]xtensive history of work loss" due to mental impairments. While these restrictions differ significantly from those set forth by Dr. Breslin two years earlier, no fact finder has assessed the probative value of Mr. Munching's newly-produced opinion or attempted to reconcile it with the record evidence as a whole. Moreover, no fact finder has made any findings as to whether and how this evidence affects the RFC formulation or the determination of the cumulative impact of Plaintiff's impairments, which are areas also challenged by Plaintiff in this suit.[8] Accordingly, the Court should reverse the Commissioner's decision and remand the case for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).[9]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). To this extent, Defendant's Motion for Judgment on the

---

[8] The form statement used by Mr. Munching generally focuses on restrictions relating to Plaintiff's personality disorder rather than depression. However, in terms of work limitations, the heading refers to "Work Limitations Related to Psychiatric State," not personality disorder alone. In any event, it is the role of the fact finder rather than the Court to determine the significance, if any, of these headings. The Court also notes that it appears that Mr. Munching is a physician's assistant rather than a physician or psychologist, and therefore would not be considered a "treating source" whose opinion could be entitled to controlling weight. Nevertheless his opinion is "important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." SSR 06-03p. Again, it would be the role of the fact finder rather than the Court to determine how the opinion should be weighed.

[9] Having so concluded, the Court will not consider further the other issues raised by Plaintiff, and instead leaves those matters for consideration, if necessary, after further determination on remand. The Court specifically notes that with respect to her back and neck pain, Plaintiff challenges the determination of the ALJ that "[t]here is no evidence of nerve root compression syndrome which might be expected based on the degree of pain alleged" and similarly challenges the ALJ's statement that the MRI of Plaintiff's spine revealed "degenerative changes without foraminal or canal compromise or spinal stenosis." (ALJ Opinion, Tr. at 18.) In challenging these conclusions, Plaintiff points to evidence in her medical record from Dr. Wang in 2005 and 2006 noting degenerative disc disease with "radiculopathy symptoms," "spinal canal stenosis" and "mild to moderate neural foraminal stenosis," and "mild to moderate neuroforaminal narrowing" based on the 2006 MRI. On at least once occasion, the notes from Dr. Wang state that Plaintiff should stay out of work for at least three weeks based on this impairment. In light of the remand recommended above, the Court leaves any further determination or consideration of these issues initially to the Commissioner.

13

Pleadings [Doc. #14] should be DENIED, and Plaintiff's Motion for Judgment on the Pleadings [Doc. #11] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 3rd day of December, 2013.

/s/ Joi Elizabeth Peake
United States Magistrate Judge